IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| **TNIJACI01 GOOD 961 LOWER BROWNSVILLE ROAD LLC,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:22-cv-01015-STA-jay |
| **FC COX CONSTRUCTION, LLC; FIRSTCHOICE PROPERTY & DEVELOPMENT LLC; BOWMAN'S WORKS, INC.; TEO STEEL, INC.; JOSH LEFEVRE CONSTRUCTION COMPANY LLC; JOHNSON EQUIPMENT COMPANY; ENVIROGREEN, INC.; and BOSCO CONTRACTOR SERVICES, LLC,** | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO DISMISS OF
DEFENDANT BOWMAN'S WORKS**

Before the Court is the motion to dismiss of Defendant Bowman's Works, Inc. (ECF No. 94.) Plaintiff has filed a response to the motion. (ECF No. 98.) Defendant did not file a reply. For the following reasons, the motion is **DENIED**.

**STANDARD OF REVIEW**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient facts to "state a claim to relief that is plausible on its face," meaning it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The complaint need not set forth

"detailed factual allegations," but it must include more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement." *Id.* at 555.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to comply with the requirements of Rule 8(a)(2). Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (internal citation omitted).

## BACKGROUND

The Court previously described the allegations contained in Plaintiff's amended complaint (ECF No. 46) in its order denying the motions to dismiss of Josh LeFevre Construction Company, FirstChoice Property & Development LLC, and TEO Steel, Inc. (ECF No. 99.) Those allegations are as follows.[1]

In August 2017, Cox's Paradise, LLC owned property at 45 Whalley Drive, Jackson, Tennessee (the "Property"). At that time, Cox's Paradise contracted with either FirstChoice or FC Cox Construction, LLC as a general contractor to undertake various improvements at the Property, including the construction of a 240,000 square foot industrial building and the accompanying outdoor parking area (the "Industrial Building"). FirstChoice and FC Cox in turn hired Bowman's Works, Inc., TEO Steel, Inc., Josh LeFevre Construction Company LLC, Johnson Equipment Company, Envirogreen, Inc., and Bosco Contractor Services, LLC as subcontractors to construct various improvements to the Property.

---

[1] For purposes of ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true. Therefore, all facts are drawn from the amended complaint and are stated for the purpose of deciding this motion only.

Cox's Paradise transferred and assigned ownership of the Property to FirstChoice in or around February 2018. Gladstone Commercial Limited Partnership[2] and FirstChoice entered into a Purchase and Sale Agreement (the "Purchase Agreement") on or about October 31, 2019. Pursuant to the Purchase Agreement, FirstChoice sold all rights and title to the Property to Gladstone.[3] Construction of the Industrial Building finished in or around November 2019. In or around December 2019, Gladstone transferred and assigned ownership of the Property to Plaintiff.

Around December 11, 2019, FirstChoice and Plaintiff entered into the Omnibus Assignment, whereby FirstChoice assigned to Plaintiff all Gladstone's right, title, and interest in and to, among other things, all assignable plans, surveys, plans and specifications, if any, with respect to the Property, and any repairs or renovations to the improvements on the Property; all assignable contracts relating to the Property; all assignable warranties, guarantees and bonds relating to the Property; and all assignable permits, licenses, certificates of occupancy and other governmental approvals which relate to the Property.

Following the purchase of the Property, Plaintiff discovered several latent construction defects with the Industrial Building. The masonry installed at the loading dock has signs of flexing and displacement, with excessive cracking and spalling at the concrete dock edges. Loading dock equipment was not installed properly, resulting in improper wear and damage. The interior concrete building slab is less than the required six-inch thickness and lacks the required gravel base. Full thickness cracks of the concrete are found throughout the slab. The exterior parking concrete slab has less than the required seven-inch thickness and has no required steel

---

[2] Gladstone is the sole member of TNIJACI01 Good 961 Lower Brownsville Road LLC.
[3] Though not specifically mentioned in the complaint, the Purchase Agreement contained an "as is" clause, in which FirstChoice disavowed all representations and warranties as to the condition of the Property. (ECF No. 46, Ex. 1.)

reinforcement and no gravel base.  The building drainage downspouts improperly flow onto splash blocks, resulting in substantial erosion and risk of structural damage.  Wind bracing is not installed at certain loading docks.  Soil prior to and during construction was not properly compacted or installed, resulting in the soil covering underground piping settling or collapsing.  These construction defects are allegedly due to Defendants' failure to construct the Industrial Building to building plan specifications and to the applicable standards of the industry.

On October 4, 2021, Plaintiff notified FirstChoice and FC Cox of the construction defects at the Property and requested remediation pursuant to Tenn. Code Ann. § 66-36-103.  FirstChoice and FC Cox denied liability but requested further information as to the defects and asked to perform a site inspection.  On December 6, 2021, Plaintiff provided a report to FirstChoice and FC Cox further detailing the construction defects it had identified.  On January 6, 2022, FirstChoice and FC Cox performed a site inspection.  FirstChoice and FC Cox have allegedly failed to remedy the defects and have further failed to provide Plaintiff any of the documents it is entitled to under the Omnibus Assignment.

Plaintiff thereafter filed this suit alleging negligence in the construction of the Industrial Building against all Defendants and breach of the Purchase Agreement and Omnibus Assignment by FirstChoice.  Plaintiff alleges that Bowman's Works was negligent in the construction of the interior building slab and loading docks.

## **ANALYSIS**

Defendant's motion asserts that Plaintiff's negligence claims against it are barred by the economic loss doctrine and by the Purchase Agreement's "as is where is" clause.[4]  Defendant

---

[4] The Court previously denied the motions to dismiss of Josh LeFevre Construction Company, FirstChoice Property & Development LLC, and TEO Steel, Inc. on the issues of economic loss

additionally asserts that the gravel base was not within the scope of its work and that the claims against it are subject to binding arbitration.

### 1. The economic loss doctrine does not bar Plaintiff's negligence claims.

The economic loss doctrine "has been described as a 'judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship.'" *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 142 (Tenn. 2021) (quoting *Plourde Sand & Gravel v. JGI E., Inc.*, 917 A.2d 1250, 1253 (N.H. 2007)). While most jurisdictions have adopted the economic loss doctrine in some form, there exists "a number of permutations" of the doctrine, which has made it "difficult to define." *Id.* (quoting *David v. Hett*, 270 P.3d 1102, 1105 (Kan. 2011)). Tennessee courts have adopted two such "permutations" of the economic loss doctrine consisting of similar but distinct rules, both of which are referred to as the economic loss doctrine even though they apply in different contexts to bar tort claims: (1) when a plaintiff seeks recovery for purely economic damages when it lacks privity of contract with the defendant, or (2) when a defective product damages itself without causing personal injury or damage to other property. *Commercial Painting Co. Inc. v. Weitz Co. LLC*, 2022 WL 737468, at *14 (Tenn. Ct. App. Mar. 11, 2022) (citing *United Textile Workers of Am., AFL-CIO v. Lear Siegler Seating Corp.*, 825 S.W.2d 83, 87 (Tenn. Ct. App. 1990) (applying the first form of the economic loss doctrine); *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488-89 (Tenn. 2009) (adopting the second form of the economic loss doctrine)).[5]

---

and the "as is where is" clause. (ECF No. 99.) The Court reiterates and reaffirms its analysis of those two issues in this order.

[5] The Tennessee Court of Appeals has gone so far as to say that the economic loss doctrine "remains a confusing morass of permutations." *Commercial Painting*, 2022 WL 737468, at *14. For the sake of simplicity, this order will refer to the first permutation of the economic loss

Defendant argues that the Tennessee Court of Appeals expanded the doctrine beyond products liability cases in *Commercial Painting* and reasons that it applies in this case. Plaintiff has responded that the Tennessee Supreme Court has confined the doctrine to products liability cases, that the Tennessee Court of Appeals improperly defied the Tennessee Supreme Court in expanding the doctrine, and that this Court should not follow the Tennessee Court of Appeals' *Commercial Painting* decision. The Court finds that the *Lincoln General* does not bar Plaintiff's negligence claim against Bowman's Works for the following reasons.[6]

The Tennessee Supreme Court expressly adopted the *Lincoln General* rule in response to a certified question of law from a federal court asking whether the sudden calamitous event exception to the economic loss doctrine applied in Tennessee. *Lincoln Gen.*, 293 S.W.3d at 488. The Tennessee Supreme Court explained that in Tennessee the rule "is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property." *Id.* at 489.

The Tennessee Supreme Court most recently discussed the *Lincoln General* rule in *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125 (Tenn. 2021). In that case, the plaintiff filed suit against the defendants alleging breach of express and implied warranties, breach of contract, negligent misrepresentation, fraud, and a Tennessee Consumer Protection Act claim after the plaintiff purchased from one defendant over 200 defective trucks that had been manufactured by the other defendant. *Id.* at 129-34. The Tennessee Supreme Court conducted an extensive

---

doctrine under Tennessee law as the "*Lear Siegler* rule" and the second as the "*Lincoln General* rule."

[6] It is undisputed that this is not a products liability case. Plaintiff alleges a claim for negligent construction of the Industrial Building and, specifically as to Bowman's Works, negligent construction of the interior concrete slab. That is, Plaintiff alleges that Bowman's Works was negligent in the provision of services.

6

survey of the history of the *Lincoln General* rule and its development in Tennessee, finding that it had never applied it outside the products liability context. In deciding whether there is a fraud exception to the *Lincoln General* rule, the Tennessee Supreme Court followed the Utah Supreme Court which, rather than announcing a broad rule extending the *Lincoln General* rule to all fraud claims or none, held that in situations involving a contract between sophisticated commercial business entities and a fraudulent inducement claim seeking recovery of economic losses only, the *Lincoln General* rule applies if the only misrepresentations by the dishonest party concern the quality or character of the goods sold. *Id.* at 153-54 (citing *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 194 (Utah 2018)). The Tennessee Supreme Court found that the plaintiff's fraud claim concerned misrepresentations regarding the quality or character of the goods contracted for and thus held that the *Lincoln General* rule barred that plaintiff's tort claims against that defendant.

The Tennessee Court of Appeals picked up the issue in *Commercial Painting Co. Inc. v. Weitz Co. LLC*, 2022 WL 737468 (Tenn. Ct. App. Mar. 11, 2022). In that case, the defendant subcontracted the plaintiff to do drywall for a construction project. *Id.* at *1. The plaintiff alleged that the defendant was already six to eight months behind schedule on the project when it subcontracted the plaintiff and unreasonably compressed construction schedules to make up for the delay. *Id.* at *3. After some litigation, the plaintiff eventually filed an amended complaint alleging negligent and intentional misrepresentation, breach of contract, and unjust enrichment. *Id.* at *4. In determining whether the plaintiff's tort claims were barred by the *Lincoln General* rule, the Tennessee Court of Appeals grappled with the Tennessee Supreme Court's opinion in *Milan Supply Chain* and explained that there was evidence in it supporting both parties' positions on whether the *Lincoln General* rule applies outside of the products liability context, leaving it to

7

"read [its] supreme court's tea leaves to determine the proper result." *Id.* at *18 (internal quotation omitted). For example, the express language of *Milan Supply Chain* applies only to transactions involving goods, the Tennessee Supreme Court stated that it had "never applied the economic loss doctrine outside the products liability context, in which it originated," and the Tennessee Supreme Court quoted several authorities taking a dim view of the *Lincoln General* rule. *Id.* at *19 (quoting *Milan Supply Chain*, 627 S.W.3d at 153).

On the other hand, the Utah Supreme Court case that the Tennessee Supreme Court followed is itself a case outside the products liability context, the rationale behind the adoption of a limited exception utilized by the Utah Supreme Court is equally applicable to other types of contracts besides those for the sale of goods, and the Tennessee Supreme Court has mentioned the economic loss doctrine in cases outside the products liability context, though it never applied it. *Id.* (citing *John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991) (considering whether the plaintiff was entitled to recover for purely economic losses even though "[t]his is not a products liability case.")). The Tennessee Court of Appeals found particularly compelling the fact that the Tennessee Supreme Court in *Milan Supply Chain* relied heavily on a passage from the Utah Supreme Court.

> When the contract terms contain the grounds for the tort claim, we see no reason to conclude that recovery under contract law is insufficient—"when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim."

*Id.* at *21 (quoting *Milan Supply Chain*, 627 S.W.3d at 155). The Tennessee Court of Appeals concluded that this concern applies with equal force in the products liability context as in other commercial transactions between sophisticated parties, and thus held that the *Lincoln General* rule applies outside the products liability context. *Commercial Painting*, 2022 WL 737468, at *21. The Tennessee Court of Appeals declined to adopt a broad rule expanding the *Lincoln General*

8

rule to all contracts, limiting its holding to situations "outside the products liability context when the contract at issue was negotiated between sophisticated commercial entities." *Id.*

The Tennessee Supreme Court thereafter granted the plaintiff's application for permission to appeal the issue of whether the *Lincoln General* rule applies to the circumstances of that case. At the time of entry of this Order, the Tennessee Supreme Court has not released an opinion in that case. *Commercial Painting Co., Inc., v. Weitz Co. LLC*, 2022 WL 3149615 (Tenn. Aug. 4, 2022).

The question facing the Court at this juncture is whether it should follow the Tennessee Supreme Court or the Tennessee Court of Appeals. Though an intermediate appellate court's judgment announcing a rule of law is "a datum for ascertaining state law," a federal court has discretion to disregard it if it is convinced that the highest court of the state would decide otherwise. *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990). While the Tennessee Court of Appeals may have gleaned from the Tennessee Supreme Court's "tea leaves" that it would expand *Lincoln General* rule, the Court cannot ignore the fact that the express language of *Milan Supply Chain* applies only to transactions involving goods. The Court therefore finds that the *Lincoln General* rule does not apply in this case.[7]

Moreover, the Court finds that there was privity of contract between Plaintiff and Bowman's Works. Plaintiff has alleged that FirstChoice sold and assigned its contracts affecting the Property, including FirstChoice's contract with Bowman's Works, to Gladstone, which then assigned these contracts to Plaintiff. An assignee of a contract stands in the shoes of the assignor and has all rights under the contract. *Collier v. Greenbrier Devs., LLC*, 358 S.W.3d 195, 201 (Tenn.

---

[7] *Commercial Painting* is currently before the Tennessee Supreme Court. Therefore, to the extent this order denies the motion on that ground, that denial is without prejudice to refiling it pending the Tennessee Supreme Court's decision in *Commercial Painting*.

9

Ct. App. 2009). Therefore, Plaintiff has all the rights of FirstChoice under the contracts it executed with Bowman's Works pertaining to the Property.

Defendant's motion to dismiss on this ground is denied.

**2. The Purchase Agreement's "as is" clause does not bar Plaintiff's negligence claim.**

Defendant asserts that the "as is" clause contained within the Purchase Agreement precludes Plaintiff's negligent construction claim. An "as is" clause in a contract for the sale or lease of property

> means that the buyer or lessee is purchasing or leasing the goods or property as it is in its present state or condition. This generally implies that the property is taken with whatever faults it may possess and implies that the seller or lessor is released of any obligation to reimburse the purchaser or lessee for losses or damages that result from the condition of the goods or property.

*Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991). When property is leased or sold "as is," both parties are charged with knowledge of the existence of any problems with the property. *Chandler v. Johnson*, 1996 WL 491827, at *4 (Tenn. Ct. App. Aug. 30, 1996) (citing *Jaffe*, 817 S.W.2d at 25).

Though Tennessee case law discussing "as is" clauses is somewhat scarce, the case law makes clear that an "as is" clause in a contract for the sale or lease of property prohibits the buyer or lessee of the property from bringing a claim under the sale contract or lease for defects in the property. *Jaffe*, 817 S.W.2d at 25 (holding that the lessee of a building was not entitled to "set off" against rent owed expenses incurred in repairing defects in the building that existed at the time the lease was executed because "when property is leased 'as-is' both parties are charged with the knowledge of" structural defects); *C.F. Prop., LLC v. Scott*, 2011 WL 4446995, at *5 (Tenn. Ct. App. Sept. 27, 2011) (holding that a lessor was not obligated by the lease to repair a leaking roof in part because the lease contained an "as is" clause stating that "the roof in the back part of the building leaks and the owner does not plan to repair it"). In essence, Tennessee courts hold

10

that an "as is" clause charges the buyer or lessee of property with knowledge of any defects in the property and prohibits the buyer or lessee from then bringing a contract claim against the seller or lessor, as the buyer or lessee is charged by the "as is" clause with knowledge of the defects and agreed in the contract to take the property anyway.

Tennessee case law discussing the application of "as is" clauses to tort claims is even more scant. Certain cases applying an "as is" clause to a tort claim hold that an "as is" clause can bar a tort claim against the seller or lessor of property, though these cases do not always explain how the "as is" clause operates to do so. *Chandler*, 1996 WL 491827, at *4 (holding that a lessor was not liable to a lessee for negligence where the lessee was shocked by a faulty electrical system in the leased building in part because the lease contained an "as is" provision requiring the plaintiff to maintain the electrical system); *Stafford v. Emberton*, 2009 WL 2960391, at *2-3 (Tenn. Ct. App. Sept. 15, 2009) (holding that the buyers of a home could not recover against the seller for defects not disclosed by the seller under a negligent misrepresentation theory because the buyers agreed to buy the home "as is" and "agree[d] that they have carefully inspected the premises prior to signing" the sale contract, thus negating any reliance by the buyers on the misrepresentation). Unlike in the cases involving a contract claim, these cases do not even hint at the notion that an "as is" clause is a blanket bar on bringing a tort claim against a seller or lessor of property. Instead, when the court discussed the issue in *Stafford*, it spoke of the "as is" clause as merely negating an element of a tort claim by virtue of charging the buyer of property with knowledge of defects. *Stafford*, 2009 WL 2960391, at *2-3.

The Court finds it relevant that *Stafford* and *Chandler* concern torts arising from the sale of property and a lessor's alleged breach of duties under a lease, respectively. Application of an "as is" clause to bar such a claim makes sense, as the buyer or lessee of property has the capability

11

of taking the "as is" clause into account in deciding whether to enter into the contract without the power to, for example, compel a lessor of property to adhere to its obligations under tort law to repair it. The Court has found no Tennessee case law holding that an "as is" clause is a blanket prohibition on bringing a tort claim arising from the sale of property against the seller, much less a tort claim arising from a completely different occurrence, such as the construction of a building on the property, which is governed by a separate contract.

No Tennessee case seems to explain why Tennessee courts appear to treat "as is" clauses differently when applied to contract claims and tort claims. However, in *Georgian Fine Props., LLC v. Lang*, 820 S.E.2d 464, 467 (Ga. Ct. App. 2018), the Georgia Court of Appeals explained that "As is provisions in Georgia only relieve the seller from liability on breach of warranty claims . . . However, as is provisions do not . . . release a seller from liability on non-warranty claims." *Id.* Although no Tennessee case the parties cite explicitly so holds, the Tennessee Court of Appeals has implicitly acknowledged the distinction between implied warranty claims and negligent construction claims. *See Briggs v. Riversound Ltd. P'ship*, 942 S.W.2d 529, 531 (Tenn. Ct. App. 1996) (holding that a subsequent purchaser of property may maintain a negligent construction action against the builder of a residence despite being barred from maintaining a claim on an implied warranty theory due to a lack of privity). Moreover, Tennessee courts have looked to Georgia law in ascertaining the scope of "as is" clauses. *Jaffe*, 817 S.W.2d at 25 (citing *Mulkey v. Waggoner*, 338 S.E.2d 755, 757 (Ga. Ct. App. 1985)). The Court finds that the Georgia Court of Appeals's articulation of the scope of "as is" clauses consistent with Tennessee law.

While it is true that *Briggs* concerned a residence, Tennessee courts have made clear that the duty to perform in a workmanlike manner applies not only in all construction contracts, but all service contracts. *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011)

("Accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency . . . the thing agreed to be done") (quoting 23 Samuel Williston, Williston on Contracts § 63.25 (4th ed. 2011)).[8]

Accordingly, the Court finds that the "as is" clause in the Purchase Agreement precludes Plaintiff from bringing suit for breach of warranties in the Purchase Agreement, not from bringing a negligence claim. Plaintiff's negligent construction claim is distinct from one alleging breach of a warranty in a sale contract, as the Georgia Court of Appeals explained and the Tennessee Court of Appeals implicitly acknowledged in *Briggs*. Moreover, Plaintiff's negligence claim arises from the construction of the Industrial Building, not the purchase of the Property. This is not a case analogous to *Stafford*, in which the tort alleged by the plaintiff, *i.e.*, negligent misrepresentation, arose from the sale of the home. Thus, the "as is" clause does not preclude Plaintiff's negligence claim against Defendant.

### 3. Plaintiff has plausibly alleged a negligence claim against Defendant.

Next, Defendant argues that Plaintiff has failed to allege a claim against it because laying a gravel base was purportedly not within its scope of work. As Plaintiff points out, a negligence claim has been asserted against Bowman's Works- not a contract claim. Plaintiff has plausibly alleged that Bowman's Works breached its duty to construct the interior concrete slab in a workmanlike manner by, *inter alia*, constructing the slab without a gravel base and by failing to pour the concrete to the six-inch thickness as required by the building plan specifications and industry standards. *See Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211 (Tenn. Ct. App. 2009) (recognizing a claim of negligent construction).

---

[8] *Winters* also makes clear that a construction contract is a contract for services, not the sale of products.

13

### 4. Plaintiff's claims are not subject to arbitration at this stage of the litigation.

Finally, Defendant argues that Plaintiff's claims are subject to arbitration. According to Defendant, "the contract to which Plaintiff alleges it has rights, contains a binding arbitration provision." (Mot. p. 8, ECF No. 94-1.) Plaintiff has responded that arbitration at this juncture is not appropriate because discovery is necessary to determine if the contract attached as an exhibit to Defendant's counterclaim is the operative contract.

In support of its argument, Plaintiff relies on *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 837–38 (6th Cir. 2021), for the proposition that seeking to enforce an arbitration agreement under Rule 12(b)(6) is disfavored. In *Boykin*, the plaintiff brought an employment discrimination claim against his former employer. *Id.* at 836. The employer moved to compel arbitration on the basis of an arbitration agreement it claimed the plaintiff signed. *Id.* The employee responded with an affidavit stating that he had not consented to arbitration at any time. *Id.* The district court granted the employer's motion and dismissed the case, discounting the affidavit as "self-serving." *Id.* at 836, 838. The Sixth Circuit reversed, holding that the employee's affidavit "create[d] a factual dispute over whether [the employee] authorized the arbitration contract." *Id.* at 840. That entitled the employee "to targeted discovery and a trial on the question." *Id.* at 841.

The *Boykin* Court noted that the defendant's motion under Rule 12(b)(6) for failure to state a claim was not the correct approach to compel arbitration.

> The initial determination regarding whether "the making of the agreement is in issue" generally adheres to a standard akin to that of summary judgment under Rule 56. *See* [*Boykin*, 3 F. 4th] at 838. This is particularly so where the parties rely on evidence outside the face of the complaint, which, of course, is usually not appropriate under Rule 12(b)(6). *See id.* Using the analogous Rule 56 standard, the party seeking to compel arbitration "must initially carry its burden to produce evidence that would allow a reasonable jury to find that a[n] [arbitration] contract exists." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021). For example, that party may offer "a signed [arbitration] agreement." *Structures USA, LLC v. CHM Indus., Inc.*, No. 3:21-cv-458-BJB-LLK, 2022 WL

14

882166, at *3 (W.D. Ky. Mar. 24, 2022) (citing *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881). The party opposing arbitration "must then present specific facts that would allow a reasonable jury to conclude that no [arbitration] contract was formed." *Id.* (citing *Boykin*, 3 F.4th at 839). *Boyd Nursing & Rehab., LLC v. Wells*, 2022 WL 3971034, at *8 (E.D. Ky. Aug. 30, 2022) (explaining the holding in *Boykin*). Accordingly, the Court denies the motion to dismiss on this ground.

For these reasons, the motion to dismiss of Defendant Bowman's Works is **DENIED**.

IT IS SO ORDERED.

                                               **s/ S. Thomas Anderson**
                                               S. Thomas Anderson
                                               United States District Judge

                                               Date: June 1, 2023.